Michael J. COLOMBARI and
Roberta L. Colombari

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY, Appellant.**

**Michael J. Colombari and Roberta L. Colombari, Appellants.**

v.

**Port Authority of Allegheny County.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2008.

Decided May 30, 2008.

Reargument Denied July 24, 2008.

---

David J. Barton, Pittsburgh, for designated appellants, Michael J. Colombari and Roberta L. Colombari.

Joel L. Lennen, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and COLINS, Senior Judge.

OPINION BY Judge FRIEDMAN.

The Port Authority of Allegheny County (Authority) appeals from that portion of the July 11, 2007, order of the Court of Common Pleas of Allegheny County (trial court) granting, in part, the petition for appointment of viewers (Petition) filed by Michael J. Colombari and Roberta L. Colombari (the Colombaris). The Colombaris cross appeal from that portion of the trial court's order sustaining the Authority's preliminary objections to the Petition to the extent that the Colombaris alleged a *de facto* taking of property under the former Eminent Domain Code (Code).[1] We affirm.

The Colombaris own the property located at 2334 Saw Mill Run Boulevard in the Overbrook section of the City of Pittsburgh (the Property) and operate a used car business on the Property. The Property's rear boundary is a stream known as Saw Mill Run. The Authority owns and maintains the property on the opposite side of the stream. (Trial ct. op. at 2.)

On March 29, 2000, the Authority filed a condemnation action against the Colombaris. However, the parties settled the matter, entering into an "Offer and Agreement of Sale of Land in Lieu of Condemnation" (Agreement). Pursuant to the Agreement, the Authority paid the Colombaris an agreed amount in exchange for a temporary construction easement (easement) and a portion of the Property. (Trial ct. op. at 2–4.)

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* formerly 26 P.S. §§ 1–101–1–903, repealed by section 5(2) of the Act of May 4, 2006, P.L. 112. Although repealed, the Code governs this case because, with certain exceptions not applicable here, the new statute applies only to condemnations occurring on or after its September 1, 2006, effective date. *See In Re: Condemnation by County of Berks,* 914 A.2d 962 (Pa.Cmwlth.2007).

The Authority then began construction of improvements known as the Stage II Light Rail Transit Project (Project). After the Authority completed the Project, the Colombaris noticed that the hillside sloping down from the Property into Saw Mill Run, which had been stable for many years, was being eroded. The Colombaris saw that the Authority had altered the far bank of the stream by installing gabion baskets,[2] by changing the grading of the slope and by installing a round, slightly elevated concrete pad where a drainage pipe directs drainage from the Project into the stream. The Colombaris also saw gabion baskets on their side of the stream, upstream and downstream from the Property, but not at the curve of the stream that affects the stream bank at the Property. (Trial ct. op. at 3–5.) The Colombaris filed the Petition, alleging a *de facto* taking and/or damage to abutting land. The Authority filed preliminary objections, and the trial court held a hearing on the matter.

At the hearing, the Colombaris presented the expert testimony of Victor Dozzi, who opined that the Project changed the grading of the land and the character of the stream flow, which resulted in the erosion of the Property. Dozzi stated that the gabion baskets and an energy dissipating structure[3] used to prevent erosion on the Authority's side of the stream were forcing the flow of the stream towards the Property, which aggravated erosion along the bank where there is no protection. (R.R. at 121a–22a, 128a–29a.)

The Authority presented the expert testimony of Robert Yauger, who testified that the erosion on the Property was a direct result of: (1) surface water that gathered on the Colombaris' parking lot; (2) a drainage pipe that brought additional water to the damaged area; (3) an excavation done to install a sewer interceptor pipe within the streambed of Saw Mill Run, which was not done by the Authority; and (4) the occurrence of Hurricane Ivan in September of 2004, which increased stream flow from 32.6 cubic feet per second to over 150 cubic feet per second. Yauger stated that the damaged area showed signs of instability and scour[4] prior the Project. (Trial ct. op. at 9–11; *see also* R.R. at 250a–51a.)

After considering the evidence, the trial court found that there had been no *de facto* taking but that the gabion baskets and the energy dissipater built on the Authority's property in connection with the Project caused consequential damages to the surface support of the Property. The trial court referred the matter to a board of viewers for a hearing on the consequential damages, if any, to the Property's surface support. (Trial ct. op. at 5, 7–8, 11–12.) The Authority filed an appeal from the trial court's determination that the Project caused consequential damages, and the Colombaris filed a cross appeal from the determination that there was no *de facto* taking.[5] (Trial ct. op. at 6.)

---

2. A gabion basket is a wire encasement filled with stones to support a bank. (R.R. at 197a.)

3. The energy dissipating structure is the round, slightly elevated concrete pad that the Colombaris noticed. In the record, this structure is referred to as a "stilling basin," a "birdbath," a "fishbowl" and a "catch basin." (R.R. at 160a–61a, 164a.) Its purpose is to prevent storm water flowing into the stream from gouging the stream bed. (R.R. at 112a.)

4. Scour is the removal of earth by moving water. (Trial ct. op. at 10 n. 5; *see also* R.R. at 203a.)

5. Our scope of review is limited to determining whether the trial court's findings of fact are supported by substantial evidence in the record and whether an error of law or abuse

## I. Applicable Law

■ A *de facto* taking occurs when an entity clothed with the power of eminent domain has substantially deprived property owners of the beneficial use and enjoyment of their property. *Department of Transportation v. Greenfield Township–Property Owners,* 135 Pa.Cmwlth. 113, 582 A.2d 41 (1990), *appeal denied,* 527 Pa. 669, 593 A.2d 844 (1991). When property owners allege a *de facto* taking, they bear a heavy burden and must show: (1) the condemnor has the power of eminent domain; (2) exceptional circumstances have substantially deprived them of the use and enjoyment of their property; and (3) the damages sustained were the immediate, necessary and unavoidable consequences of the exercise of the condemnor's eminent domain power. *In re Condemnation by PennDOT,* 827 A.2d 544 (Pa.Cmwlth.2003), *appeal denied,* 577 Pa. 737, 848 A.2d 930 (2004). There is no bright line test for determining whether a government action has resulted in a *de facto* taking; each case turns on its own facts. *Id.*

■ The law of surface waters states that water must flow as it is wont to flow; thus, only where water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality is there a legal injury. *Snap–Tite, Inc. v. Millcreek Township,* 811 A.2d 1101 (Pa.Cmwlth.2002). To effectuate a taking, an overflow of water must constitute an actual, **permanent** invasion of the land amounting to an appropriation of the land, not merely an injury to the property. *Id.* A water condition causing damage to property is **not** permanent if it is abatable and preventable. 9 Nichols on Eminent Domain § 34.03(3)(a) (3d ed. 1999).

■ As for consequential damages, section 612 of the Code provides that condemnors "shall be liable for damages to property abutting the area of an improvement resulting from the change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, **whether or not any property is taken.**" 26 P.S. § 1–612 (emphasis added). As this language suggests, a claim for consequential damages is separate and distinct from a claim for a *de facto* taking. *Capece v. City of Philadelphia,* 123 Pa. Cmwlth. 86, 552 A.2d 1147 (1989).

However, this court's decision in *Borough of Dickson City v. Malley,* 94 Pa. Cmwlth. 386, 503 A.2d 1035 (1986), does not appear to recognize the distinction. In Dickson City, the borough paved a dirt road abutting Malley's property, causing a change in grade of at least five feet. Water runoff during rain storms undermined the sand beneath Malley's pool, and Malley alleged a *de facto* taking. This court stated, "Because the trial court found that the water runoff caused the sand underneath [Malley's] pool to wash away, we hold that **under Section 612** the trial court properly concluded that a ***de facto* taking** had occurred." *Id.* at 1037 (emphasis added). Based on the clear and unambiguous language in section 612, i.e., that there is liability for consequential damages "whether or not any property is taken," it is incorrect to interpret *Dickson City* to mean that an entity's liability for consequential damages under section 612 necessarily means that property has been taken by that entity.

## II. Colombaris' Issue— *De Facto* Taking

■ Although the trial court concluded that the Colombaris are entitled to conse-

---

of discretion was committed. *Nolen v. New-town Township,* 854 A.2d 705 (Pa.Cmwlth. 2004).

quential damages for loss of surface support, the Colombaris argue that there was also a *de facto* taking because the Authority substantially deprived them of the beneficial use of the Property.[6] We disagree.

As indicated above, to effectuate a taking, a water condition causing damage to property must result in permanent injury, and an injury is not permanent if it is abatable and preventable. Here, the Colombaris' own expert testified that two levels of gabion baskets would have stopped the erosion problem altogether. (R.R. at 125a–26a.) Moreover, Mr. Colombari, when asked whether he had done anything to remediate the damage, testified, "Not yet ...," (S.R.R. at 170b), which acknowledges that remediation is possible. Because the Colombaris failed to establish that the erosion is not preventable and that the loss of surface support is permanent, the Colombaris did not meet their heavy burden of establishing a *de facto* taking.

### III. Authority's Issues

### A. Failure to Plead a Section 612 Claim

■ The Authority argues that, although the Colombaris pled a cause of action for a *de facto* taking, the Colombaris failed to plead a cause of action for section 612 consequential damages. Thus, the Authority maintains that, under Pa. R.C.P. No. 1020(d),[7] the Colombaris waived their right to pursue a consequential damages claim. We disagree.

Pa. R.C.P. No. 1020(d) states:

(d) If a transaction or occurrence gives rise to more than one cause of action

heretofore asserted in assumpsit and trespass, against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person. Failure to join a cause of action as required by this subdivision shall be deemed a waiver of that cause of action as against all parties to the action.

The primary purpose of this rule is to ensure that causes of action arising out of the same occurrence will be tried together and that judicial resources will not be wasted resolving the dispute in two separate actions. 2 Goodrich Amram 2d, § 1020(d):1 (2001). Where a plaintiff pleads several causes of action arising out of one occurrence in a single count rather than in separate counts, the error is merely technical, and, thus, where there is no showing of prejudice to the opposing party, a court should permit an amendment to the complaint rather than dismiss it. 2 Goodrich Amram 2d, § 1020(d):4 (2001). A party may amend a pleading at any time by leave of court, and the amended pleading may set forth a new cause of action; an amendment even may be made to conform a pleading to the evidence offered or admitted. Pa. R.C.P. No. 1033.

Here, in Paragraph 9 of their Petition, the Colombaris asserted that the Authority effected a *de facto* taking "**and/or** damaged [the Colombaris'] abutting land." (R.R. at 4a) (emphasis added). In Paragraph 6.c, the Colombaris alleged that the Authority damaged their Property "by removing the surface support of the [Property]...." (R.R. at 3a.) Thus, the Colombaris have set forth a consequential damages claim

---

**6.** The Colombaris point out that, before the Project, they were able to park eighty motor vehicles on the Property but, afterward, they lost eight to ten parking spaces due to the erosion and instability of the stream bank. (Trial ct. op. at 8.)

**7.** This court has noted that the Rules of Civil Procedure apply in eminent domain cases. *Luzerne County Flood Protection Authority v. Reilly,* 825 A.2d 779 (Pa.Cmwlth.2003).

under section 612 as part of their *de facto* taking claim. Such a pleading is consistent with this court's holding in *Dickson City*. Thus, arguably, the Colombaris have set forth only one cause of action in their Petition.

However, as indicated above, the *Dickson City* holding is misleading; a *de facto* taking claim is separate from a consequential damages claim. Thus, as the Authority states, the Colombaris set forth two causes of action in one count of their Petition. Because this is merely a technical error, it may be amended. The trial court, by allowing the Colombaris to pursue their consequential damages claim, in effect, granted the Colombaris leave to amend their Petition. Because there is no showing of prejudice to the Authority, we conclude that the trial court did not abuse its discretion in doing so.[8]

## B. Failure to Establish a Section 612 Claim

The Authority next argues that the Colombaris did not establish a section 612 surface support claim.[9] We disagree.

First, the Authority contends that the Colombaris failed to prove that the Authority diverted water from its natural channel or unreasonably changed the quantity of the water flow so that it injured the surface support of the Property. However, based on Dozzi's credible expert testimony, the trial court found that the Authority installed gabion baskets and an energy dissipater that diverted the water

flow to a degree that aggravated the erosion of the stream bank, which served as surface support for the Property. (*See* R.R. at 114a–18a, 121a–22a.)

Second, the Authority contends that the Colombaris failed to prove that the action causing the damage to the Property took place on abutting property. However, the trial court found otherwise. Indeed, the record is replete with photos and diagrams showing that the improvements made pursuant to the Project abut the Property. (*See* R.R. at 28a (upper right hand corner), 43a.) In fact, considering that the Authority attempted to condemn a portion of the Property in connection with the Project's construction, it is disingenuous for the Authority to argue now that the Property does not abut the Project area.

Third, the Authority contends that the Colombaris failed to prove that the injury to the Property's surface support occurred in conjunction with the Authority's exercise of the power of eminent domain. However, the trial court found that the loss of surface support was "incident to [the Authority's] Project." (Trial ct. op. at 12.) Moreover, the gabion baskets and energy dissipater at issue here are mentioned in the Project's Erosion and Sediment Pollution Control Plan. (S.R.R. II at 699b–709b.) Thus, there is no question that these were constructed in conjunction with the Project.

Fourth, the Authority asserts that, instead of proceeding under the Code

---

8. The Authority also argues that, in the settlement Agreement, the Colombaris released the Authority from a subsequent claim for damages under section 612. However, because the Authority did not include this issue in its concise statement of matters complained of on appeal, the Authority has waived the issue. Pa. R.A.P. 1925(b)(4)(vii) (stating that issues not included in the statement are waived).

9. The Authority also contends that the Colombaris failed to establish a section 612 change of road grade claim. However, the trial court did not base its holding on a change in the grading of a road. The trial court stated, "a cause of action is recoverable under § 612 for injury to surface support [and][t]he Colombaris ... suffered loss of surface support...." ( Trial ct. op. at 12.)

against the Authority, the Colombaris should have brought a negligence action against the agents of the Authority who designed or constructed the energy dissipater. In making this argument, the Authority points out that Dozzi criticized the placement of the energy dissipater in the stream.[10] Where an intrusion is the result of actions by an independent contractor, to proceed under the Code, the landowner must prove that the authority either authorized or directed the independent contractor's action. *Bucks County Water and Sewer Authority v. Approximately 9.180 Square Feet of Land,* 147 Pa.Cmwlth. 612, 608 A.2d 1109 (1992). Here, Keith Wargo, an employee of the Authority who was the Project Engineer and who was responsible for managing the civil and architectural design for the Project, testified that he thought that the energy dissipater "was constructed as intended." (S.R.R. at 208b–09b, 261b–62b.) Such testimony is sufficient to show that the Authority authorized the placement of the energy dissipater in its present location.[11]

### C. Final Determination

The Authority also argues that the trial court did not make a final determination as to whether the Colombaris incurred consequential damages because the trial court's order refers the matter to a board of viewers to "hold a hearing on the extent of consequential damages … **if any**…." (Trial ct. 7/11/07 order) (emphasis added). However, having referred the matter to the board of viewers, the trial court determined **liability** for consequential damages. The board of viewers must determine only the **amount** of consequential damages.

Accordingly, we affirm.

### O R D E R

AND NOW, this 30th day of May, 2008, the order of the Court of Common Pleas of Allegheny County, dated July 11, 2007, is hereby affirmed.

---

**10.** Dozzi testified that the energy dissipater should have been placed next to the stream, rather than in the stream. (R.R. at 126a.) Dozzi also testified that the engineering studies showing that the energy dissipater would not increase the stream's rate of flow assumed that the dissipater would be near the stream level; however, now, the dissipater is above the stream level and deflecting the water. (R.R. at 172a–73a.)

**11.** The Authority contends that, even if the Project caused the erosion of the surface support of the Property, the Colombaris failed to mitigate the erosion, and, as a result, they are not entitled to damages. However, because the Authority did not raise this issue in its concise statement of matters complained of on appeal, it is waived. Pa. R.A.P. 1925(b)(4)(vii).