# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James M. McMaster and      :
Mary Ellen McMaster, h/w,      :
     :
         Appellants      :
     : No. 628 C.D. 2016
        v.      : Argued: February 6, 2017
     :
The Township of Bensalem      :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED: March 13, 2017**


        This matter is an appeal from an order of the Court of Common Pleas of Bucks County (trial court) sustaining preliminary objections to a petition for appointment of viewers. For the reasons set forth below, we affirm.

        James M. McMaster and Mary Ellen McMaster (Property Owners) are the owners of 6001 Bensalem Boulevard, a residential property in Bensalem, Pennsylvania (the Property). The Property is approximately 6.25 acres in size and consists of three tax map parcels, 2-85-67, 2-55-857, and 2-85-103. (J. McMaster Dep. at 16-17, Reproduced Record (R.R.) at 152a-153a.) The Property is located on the east side of Bensalem Boulevard between Bensalem Boulevard and the Neshaminy Creek, which forms the eastern boundary of the Property. (*Id.* at 22-24, 37-38 & Dep. Exs. 2 & 3, R.R. at 158a-160a, 173a-174a, 259a-260a.) Husband Property Owner and his family have lived on the Property and used it continuously as a residence since 1986. (J. McMaster Dep. at 7, 35, 67, R.R. at 143a, 171a,

203a.)  Property Owners' house is on tax map parcel 2-85-67, the largest of the three parcels.  (*Id.* at 22-24, 29-31 & Dep. Exs. 2, 3 & 4, R.R. at 158a-160a, 165a-167a, 259a-261a.)  Tax map parcel 2-55-857, on the northwest side of the Property, and the northern part of tax map parcel 2-85-67 are heavily wooded and cannot be developed without a variance because they are in a flood plain.  (J. McMaster Dep. at 20-24, 26-27, 29-31, 107-08 & Dep. Exs. 2, 3 & 4, R.R. at 156a-160a, 162a-163a, 165a-167a, 243a-244a, 259a-261a.)

On August 31, 2006, Property Owners filed a petition for appointment of viewers, alleging that the Township of Bensalem (Township) in 1988 or 1989 constructed a storm water system that redirected storm water from the west side of Bensalem Boulevard onto a significant portion of the Property and asserting that this constituted a *de facto* taking of the Property.[1]  Property Owners granted the Township an open-ended extension of time to respond and the case lay dormant until 2014.  In 2010, while the case was inactive, the Township installed underground piping through the Property to carry the water discharged from the west side of Bensalem Boulevard to the Neshaminy Creek.  (Amended Petition for Appointment of Viewers ¶¶9, 25, R.R. at 81a, 83a; J. McMaster Dep. at 83-86, 92-101, R.R. at 219a-222a, 228a-237a.)  In March 2014, the Township filed preliminary objections to the petition for appointment of viewers.  On April 15, 2014, Property Owners filed an amended petition for appointment of viewers, in which they alleged both that the redirection of storm water that began in 1988 or

---

[1] The action was not time-barred because the statute of limitations in effect at the time was 21 years for "proceeding[s] in inverse condemnation, if property has been taken and the condemnor has not made payment."  Former 42 Pa. C.S. § 5530(a)(3), deleted by Section 3 of the Act of May 4, 2006, P.L. 112, as to actions accruing after September 1, 2006.  *See* Act of May 4, 2006, P.L. 112, §§ 3, 6(3), 7.

2

1989 was a *de facto* taking and that the 2010 pipe installation was a *de facto* or *de jure* taking. On May 5, 2014, the Township filed preliminary objections to the amended petition for appointment of viewers.

Discovery was taken on the preliminary objections. Husband Property Owner testified in his deposition that in the spring of 1989, he noticed that the area north of his house and lawn "was flooded with several feet of water" and that this flooding occurred again within a week or two. (J. McMaster Dep. at 59-60, R.R. at 195a-196a.) Until the pipe installation in 2010, this flooding continued to occur whenever there were heavy rains or thunderstorms and the water would remain on the northern part of the Property for days or weeks. (*Id.* at 63-65, R.R. at 199a-201a.) There was no noticeable flooding after light rainfall. (*Id.* at 63-64, R.R. at 199a-200a.) Husband Property Owner testified that in 1990 the Township told him that the water came from a pipe that the Township installed in 1988 to solve a drainage problem on west side of Bensalem Boulevard. (*Id.* at 39-46, R.R. at 175a-182a.) The Township had thought that the pipe into which its new storm water pipe discharged ran along Bensalem Boulevard to a pipe that discharged into the Neshaminy Creek, but the pipe into which the Township redirected the storm water in fact discharged on the Property. (*Id.* at 43-46, R.R. at 179a-182a.) Husband Property Owner admitted that the Township's 2010 pipe installation solved the flooding caused by the Township's redirection of storm water. (*Id.* at 101-102, R.R. at 237a-238a.) The Property experiences flooding approximately once a year from the Neshaminy Creek unrelated to the flooding caused by the Township's redirection of storm water. (*Id.* at 87-88, R.R. at 223a-224a.)

3

All of the flooding from the redirection of storm water was on the wooded northern part of the Property, tax map parcel 2-55-857 and the northern part of tax map parcel 2-85-67, and Property Owners' house was not affected. (J. McMaster Dep. at 27-28, 60-61, 67-68, R.R. at 163a-164a, 196a-197a, 203a-204a.) The water occasionally came onto the edge of the grass 80 to 100 feet north of the house, but did not significantly affect Property Owners' lawn or their ability to use their lawn. (*Id.* at 28, 60-61, 70-71, R.R. at 164a, 196a-197a, 206a-207a.) Husband Property Owner testified that the flooded area included an area north of the lawn where he had cleared away underbrush and that he had occasionally used that cleared area for some activities, such as a horseshoes set-up for a picnic, minibike riding by one of his children, and a tree fort for his children. (*Id.* at 27-28, 60-61, 71-72, R.R. at 163a-164a, 196a-197a, 207a-208a.) Husband Property Owner did not view the cleared area as part of the lawn; after it was cleared, it remained weed-covered. (*Id.* at 60-61, R.R. at 196a-197a.) Other than letting the children play in the woods, Property Owners did not use the uncleared wooded area of the Property, but at one time had considered putting a basketball court area on part of wooded area near Bensalem Boulevard. (*Id.* at 72-73, R.R. at 208a-209a.) Husband Property Owner testified that the flooding from the Township's redirection of storm water caused the loss of five large trees in the wooded area of the Property, which he estimated contains dozens and possibly over a hundred trees, most of which are small. (*Id.* at 103-106, R.R. at 239a-242a.)

Neither party requested a hearing on the Township's preliminary objections, and the trial court[2] ruled on the preliminary objections based on the

---

[2] While this action was pending in the trial court, Husband Property Owner was elected to the Bucks County Court of Common Pleas and all Bucks County Court of Common Pleas judges **(Footnote continued on next page…)**

4

deposition of Husband Property Owner and accompanying exhibits without a hearing. On March 25, 2016, following briefing and oral argument, the trial court issued an order sustaining the Township's preliminary objections to Property Owners' claim with respect to the redirection of storm water onto the Property, concluding that the storm water redirection did not constitute a *de facto* taking because the flooding did not substantially deprive Property Owners of the use and enjoyment of the Property. The trial court, however, held that the 2010 pipe installation was a *de facto* taking, overruled the Township's preliminary objections with respect to that claim, and appointed a board of viewers to determine the amount by which the value of the Property was diminished by the 2010 pipe installation. Property Owners appealed to this Court the trial court's sustaining of the Township's preliminary objections to their storm water redirection claim. The Township did not appeal the overruling of its preliminary objections as to the 2010 taking claim. Because the overruling of preliminary objections to a petition for appointment of a board of viewers is immediately appealable under Pa. R.A.P. 311(e), the trial court's ruling that the 2010 pipe installation was a *de facto* taking and Property Owners' right to appointment of viewers with respect to that claim cannot be further challenged by the Township. *See* Pa. R.A.P. 311(g)(1)(iii) (failure to appeal the overruling of preliminary objections in an eminent domain case waives the right to challenge that ruling in a subsequent appeal from a determination of the merits).

---

**(continued…)**
recused themselves from this case. As a result, the case was heard and decided by a judge of the Monroe County Court of Common Pleas.

5

Property Owners argue that the trial court erred in rejecting their contention that the redirection of storm water onto the Property was a *de facto* taking under the Eminent Domain Code and in failing to hold that they are entitled to consequential damages for that flooding under the Eminent Domain Code.[3] Because Property Owners' claims with respect to the redirection of storm water onto the Property arose in the 1980s when the redirection occurred and the flooding began, they are governed by the former Eminent Domain Code, the Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, *formerly* 26 P.S. §§ 1-101–1-903, repealed by Section 5(2) of the Act of May 4, 2006, P.L. 112, not the current Eminent Domain Code, 26 Pa. C.S. §§ 101–1106. Although repealed, the former Eminent Domain Code applies to takings prior to September 1, 2006 because the current Eminent Domain Code, with an exception not applicable here, applies only to condemnations occurring on or after its effective date. *Colombari v. Port Authority of Allegheny County*, 951 A.2d 409, 411 n.1 (Pa. Cmwlth. 2008); *see also* Act of May 4, 2006, P.L. 112, §§ 6(1), (2), 7. As is discussed below, however, there is no difference between the former Eminent Domain Code and the current Eminent Domain Code on the issues in this appeal of *de facto* taking and consequential damages.

The questions before this Court are not whether the Property Owners were damaged by the Township's redirection of storm water and whether they may recover from the Township, but whether the harm to the Property constitutes a *de*

---

[3] This Court's review of the order sustaining preliminary objections to a petition for appointment of viewers is limited to determining whether the trial court abused its discretion or committed an error of law and whether the trial court's findings of fact are supported by substantial evidence in the record. *Colombari v. Port Authority of Allegheny County*, 951 A.2d 409, 412-13 n.5 (Pa. Cmwlth. 2008).

6

*facto* taking and whether damages are recoverable in an eminent domain proceeding. If government injury to property does not amount to a *de facto* taking and consequential damages are not permitted by the applicable Eminent Domain Code, the property owner's remedy is a negligence action for trespass. *In re Condemnation by Department of Transportation*, 137 A.3d 666, 670-73 (Pa. Cmwlth. 2016); *Poole v. Township of District*, 843 A.2d 422, 424-25 (Pa. Cmwlth. 2004). We conclude that the damage caused by the Township's redirection of storm water onto the Property does not constitute a *de facto* taking and is recoverable in only a tort action, not in a proceeding under the former or current Eminent Domain Code.[4]

Under both the former and the current Eminent Domain Codes, a *de facto* taking occurs when an entity with the power of eminent domain substantially deprives property owners of the use and enjoyment of their property. *In re Borough of Blakely*, 25 A.3d 458, 464-65 (Pa. Cmwlth. 2011); *Colombari*, 951 A.2d at 413; *Snap-Tite, Inc. v. Millcreek Township*, 811 A.2d 1101, 1105 (Pa. Cmwlth. 2002); *Genter v. Blair County Convention and Sports Facilities Authority*, 805 A.2d 51, 55 (Pa. Cmwlth. 2002). Property owners alleging a *de facto* taking bear a heavy burden of proof and must show both that exceptional circumstances exist that have substantially deprived them of the use and enjoyment of their property and that that deprivation is the direct and necessary consequence of the actions of the entity with eminent domain power. *Borough of Blakely*, 25

---

[4] Such a tort claim would not be barred by governmental immunity. Claims for flooding caused by negligent construction of storm water systems fall within the utility service facilities exception to governmental immunity, 42 Pa. C.S. § 8542(b)(5). *Glencannon Homes Association, Inc. v. North Strabane Township*, 116 A.3d 706, 719 (Pa. Cmwlth. 2015) (*en banc*); *DeTurk v. South Lebanon Township*, 542 A.2d 213, 215 (Pa. Cmwlth. 1988); *Medicus v. Upper Merion Township*, 475 A.2d 918, 919-21 (Pa. Cmwlth. 1984).

A.3d at 465; *Colombari*, 951 A.2d at 413; *Snap-Tite, Inc.*, 811 A.2d at 1106; *Genter*, 805 A.2d at 55-56. Where a *de facto* taking claim is based on harm from surface waters, the property owner must also show that the entity with eminent domain power diverted the water from its natural channel or changed the quality or quantity of water flowing onto the property. *Colombari*, 951 A.2d at 413; *Snap-Tite, Inc.*, 811 A.2d at 1106.

Both the nature of the government actions and the type of damage to the property must be considered in determining whether a *de facto* taking has occurred. If the government actions that harmed the property were intentional, that supports the conclusion that the harm is a *de facto* taking; if the harm to the property is due to negligence, that weighs against finding a *de facto* taking and supports the conclusion that owner's remedy lies in an action for trespass. *Condemnation by Department of Transportation*, 137 A.3d at 670-71; *Poole*, 843 A.2d at 424-25.

> Generally, where a landowner suffers specific damage to his property as a result of the negligent acts of a party with the power of eminent domain, the proper action lies in trespass. However, where the damages amount to a *de facto* taking that deprives a landowner of the use or access to his property, a landowner's exclusive remedy lies in eminent domain.

*Condemnation by Department of Transportation*, 137 A.3d at 670 (citations omitted). Speculative and conjectural harms are insufficient to show the substantial deprivation of use and enjoyment necessary to a *de facto* taking claim. *Borough of Blakely*, 25 A.3d at 467; *Genter*, 805 A.2d at 58*; Petition of 1301 Filbert Limited Partnership for Appointment of Viewers*, 441 A.2d 1345, 1360 (Pa. Cmwlth. 1982). An injury to property also does not constitute a *de facto* taking if

8

it is abatable, preventable or reparable. *Condemnation by Department of Transportation*, 137 A.3d at 670, 672-73; *Colombari*, 951 A.2d at 413-14.

Here, Property Owners showed that the Township diverted water from its natural channel and caused flooding on the northern part of the Property that was substantial and recurring. However, neither the nature of the Township's conduct nor the damage to the Property rose to the level of a *de facto* taking. While the flooding was due to an intentional redirection of storm water, the discharge on the Property was the result of negligence, not an intentional selection of the Property as the discharge location. Moreover, there was no showing that the flooding caused by the Township deprived Property Owners of any use of the Property. The Township's flooding did not interfere with Property Owners' use of their house or lawn. Property Owners did not show that they actually used the wooded area of the Property in any way that was affected by the flooding or that the flooding prevented any development of that area that would otherwise have been likely to occur. Property Owners showed only some sporadic use of the cleared area that may have been affected by the flooding and some damage to trees from the flooding. In addition, the fact that the 2010 pipe installation solved the flooding showed that the flooding was abatable and preventable, although this remediation was something that only the Township could do.

None of the cases relied on by Property Owners holds that the type of conduct and damage here constitutes a *de facto* taking. In *Arkansas Game & Fish Commission v. United States*, _ U.S. _, 133 S. Ct. 511 (2012), the United States Supreme Court held that the fact that government-caused flooding was not permanent did not prevent it from constituting a taking of property for which compensation must be paid. The property in *Arkansas Game & Fish Commission*,

9

however, was a wildlife and hunting preserve from which timber was harvested and the repeated flooding caused the loss of 18 million board feet of timber and changes in the plant life in the preserve that required reclamation efforts. *Id.* at _, 133 S. Ct. at 515-17. In contrast, in this case there was no showing of interference with Property Owners' use of the flooded, wooded part of the Property. The other cases relied on by Property Owners are likewise distinguishable. In *Central Bucks Joint School Building Authority v. Rawls*, 303 A.2d 863 (Pa. Cmwlth. 1973), the discharge that was held to be a *de facto* taking was effluent from a sewage treatment plant and it caused not merely flooding, but also unpleasant odors on the property. *Bretz v. Central Bucks School District*, 86 A.3d 306 (Pa. Cmwlth. 2014), involved an equity action to enjoin a continuing trespass, not a claim for *de facto* taking or for any eminent domain relief.

Property Owners' contention that they are entitled to consequential damages under the Eminent Domain Code also fails. Under both the former and current Eminent Domain Codes, a property owner can recover consequential damages for certain types of government actions regardless of whether there is a *de facto* taking of his property. Former 26 P.S. § 1-612; 26 Pa. C.S. § 714; *Colombari*, 951 A.2d at 413, 415-16; *Capece v. City of Philadelphia*, 552 A.2d 1147, 1149 (Pa. Cmwlth. 1989). Section 612 of the former Eminent Domain Code provided:

> All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

10

Former 26 P.S. § 1-612. The language of Section 714 of the current Eminent Domain Code is essentially identical.[5]

Such consequential damages without a taking are recoverable in an eminent domain proceeding only where the property damage resulted from a change of the grade of a road or highway, a permanent interference with access, or an injury to surface support. Former 26 P.S. § 1-612; 26 Pa. C.S. § 714; *Condemnation by Department of Transportation*, 137 A.3d at 672 (damages for harm to walls, fences, curbs, and a building exterior caused by highway ramp construction were not recoverable under Section 714 of the Eminent Domain Code); *Daw v. Department of Transportation*, 768 A.2d 1207, 1210-11 (Pa. Cmwlth. 2001) (damages from water drainage caused by road resurfacing were not recoverable under Section 612 of the former Eminent Domain Code because there was no change in grade of the road), *appeal dismissed*, 832 A.2d 1064 (Pa. 2003); *In re Condemnation by Rockwood Area School District of Property of Benford*, (Pa. Cmwlth., No. 202 C.D. 2009, filed December 21, 2009), slip op. at 9-10, 2009 WL 9096499 at *4-*5 (damages for flooding were not recoverable in eminent domain proceeding where there was no taking, no change in grade of a road or highway and no showing of injury to surface support).[6] The Township's actions here involved no change in grade of a road or highway or interference with access

_____

[5] Section 714 of the Eminent Domain Code provides that "[a]ll condemnors, including the Commonwealth, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access or injury to surface support, whether or not any property is taken." 26 Pa. C.S. § 714.

[6] Because it is an unreported decision, this opinion is not binding precedent, but is considered by the Court for its persuasive value. 210 Pa. Code § 69.414(a).

and Property Owners did not allege an injury to surface support of any part of the Property.

Because the trial court correctly concluded that the Township's redirection of storm water did not constitute a *de facto* taking and consequential damages were not recoverable in this eminent domain proceeding absent a taking, we affirm.

_____
JAMES GARDNER COLINS, Senior Judge

Judge Covey did not participate in the decision in the case.

12

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James M. McMaster and      :
Mary Ellen McMaster, h/w,      :
     :
     Appellants      :
     : No. 628 C.D. 2016
     v.      :
     :
The Township of Bensalem      :


# **O R D E R**


AND NOW, this 13th day of March, 2017, the March 25, 2016 order of the Court of Common Pleas of Bucks County in the above captioned matter is AFFIRMED.


_____
JAMES GARDNER COLINS, Senior Judge