# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl F. Hughes and Ellen B. Hughes,   :
h/w, and Bruce D. Hughes and Margaret :
K. Hughes, h/w, individually and on   :
behalf of all others similarly situated,   :
               Appellants   :
  :
            v.   :
  :  No. 453 C.D. 2019
UGI Storage Company   :
  :
  :
John Albrecht, individually and on   :
behalf of all others similarly situated,   :
               Appellant   :
  :
            v.   :
  :  No. 454 C.D. 2019
UGI Storage Company   :  Argued: December 11, 2019


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE FIZZANO CANNON          FILED: November 12, 2020


      Carl F. Hughes and Ellen B. Hughes, husband and wife, Bruce D.

Hughes and Margaret K. Hughes, husband and wife, individually and on behalf of

all others similarly situated, and John Albrecht, individually and on behalf of all

others similarly situated (collectively, Appellants), appeal from the March 25, 2019

order of the Court of Common Pleas of Tioga County (trial court), which sustained the preliminary objections of UGI Storage Company (UGI) and dismissed Appellants' respective petitions for appointment of a board of viewers pursuant to Section 502(c) of the Eminent Domain Code, 26 Pa.C.S. § 502(c).  For the reasons that follow, we now affirm, albeit on other grounds.[1]

**Facts and Procedural History**

This matter returns to this Court following our March 13, 2017 opinion and order vacating the trial court's April 4, 2016 orders sustaining UGI's preliminary objections and dismissing Appellants' petitions for appointment of a board of viewers.  *See Hughes v. UGI Storage Company* (Pa. Cmwlth., Nos. 629 and 630 C.D. 2016, filed March 13, 2017) (2017 Opinion).  The 2017 Opinion further directed that the matter be remanded to the trial court for an evidentiary hearing to address the potential impact of our Supreme Court's decision in *Robinson Township v. Commonwealth*, 147 A.3d 536 (Pa. 2016) (known as *Robinson IV*), as well as this Court's decision in *In re Sunoco Pipeline, L.P.*, 143 A.3d 1000 (Pa. Cmwlth.) (*Sunoco*), *appeal denied*, 164 A.3d 485 (Pa. 2016).  The 2017 Opinion set forth the following underlying facts:

> UGI [] filed an application with the Federal Energy Regulatory Commission (FERC) in 2009 seeking to operate underground natural gas storage facilities, including a gas storage field (the Meeker Storage Field). UGI further sought to delineate a 2,980[-]acre protective buffer zone (Meeker Buffer Zone) around the Meeker Storage Field.  On October 10, 2010, FERC granted UGI's

---

[1] This Court may affirm on grounds different than those relied upon by the court or agency below if such grounds for affirmance exist.  *Belitskus v. Hamlin Twp.*, 764 A.2d 669, 671 (Pa. Cmwlth. 2000); *Continuous Metal Tech., Inc. v. Unemployment Comp. Bd. of Review*, 740 A.2d 1219, 1224 (Pa. Cmwlth. 1999).

2

application to operate the Meeker Storage Field and certified portions of the Meeker Buffer Zone for those areas to which UGI had property rights. The FERC order indicated that UGI "may file a further application to include other areas within the certificated buffer zone at a later date, [after] complying with [FERC's] landowner notification requirements."[2]

To date, UGI has not acquired rights to properties of the Appellants which are located within the Meeker Buffer Zone. UGI has further failed to implement the owner notification program as part of the eminent domain process, but has used and continues to use the benefit of the complete protective Meeker Buffer Zone.

On November 5, 2015, John Albrecht, on behalf of himself and a class of similarly[ ]situated individuals, filed a Class Action Petition with the trial court for the appointment of a [b]oard of [v]iewers pursuant to Section 502 of the [] Eminent Domain Code. . . . On November 13, 2015, [the Hughes Appellants] filed an Amended Petition for the appointment of a [b]oard of [v]iewers pursuant to the [Eminent Domain] Code. All parties alleged that UGI effected a *de facto* taking of certain subsurface mineral rights within a buffer zone surrounding UGI's Meeker Storage Field—a buffer zone for which UGI sought certification and that was partially certified by FERC.
. . . .

UGI thereafter filed preliminary objections for both matters on January 14, 2016, asserting that the Petitions should be dismissed on grounds that UGI does not have the power of eminent domain and Appellants did not establish a *de facto* taking occurred.

2017 Opinion, slip op. at 2-4 (citations and footnote omitted) (footnote added).

---

[2] Section 157.6(d) of FERC's regulations, 18 C.F.R. § 157.6(d), outlines the landowner notification requirements for applications for certificates of public convenience and necessity. Of note here, that section provides that an applicant shall make a good faith effort to notify all affected landowners, including owners whose property is directly affected by the proposed activity, *id.* § 157.6(d)(1) & (2)(i), or "is within the area of proposed new storage fields or proposed expansions of storage fields, including any applicable buffer zone." *Id.* § 157.6(d)(2)(iv).

Following remand, the trial court conducted an evidentiary hearing on January 18, 2019. *See* Reproduced Record (R.R.) at 550a-81a. By opinion and order filed March 25, 2019, and amended April 23, 2019,[3] the trial court again sustained UGI's preliminary objections and dismissed Appellants' petitions seeking the appointment of a board of viewers for UGI's purported *de facto* taking of their subsurface mineral rights.

The trial court explained that the primary issue in the matter was "whether UGI possesse[d] the power of condemnation with regard to Appellants' properties without a [c]ertificate of [p]ublic [c]onvenience issued by the appropriate regulatory body." Tr. Ct. Op., 3/25/19, at 1. The trial court noted Appellants' allegation that UGI "had used its power of eminent domain, conferred upon it by [FERC], to take oil and gas rights in the Marcellus Shale and Utica Shale regions owned by said Appellants in Tioga County." *Id.* The trial court identified the three factors that must be established in order to have a *de facto* taking, namely that (1) the condemning party must have the authority to condemn, (2) there are exceptional circumstances that substantially deprive the property owner of the beneficial use and enjoyment of their land, and (3) the deprivation is the direct, necessary, and unavoidable result of the exercise of the power to condemn. *Id.* at 1-2. Ultimately, the trial court concluded that no *de facto* taking occurred here because UGI lacked the power to condemn and that it was not necessary to examine the remaining factors. *Id.* at 6.

In reaching this conclusion, the trial court concurred with UGI's contention that FERC is the controlling regulatory body herein, noting that FERC's

---

[3] The trial court's March 25, 2019 opinion and order only referenced the dismissal of the petition for the appointment of a board of viewers filed by the Hughes Appellants. The April 23, 2019 amendment corrected the earlier opinion to reflect a dismissal of the petitions filed by both the Hughes Appellants and Albrecht Appellants. *See* Tr. Ct. Am. Op., 4/23/19.

4

exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale was authorized pursuant to Section 717(a) of the Natural Gas Act (NGA), 15 U.S.C. § 717(a). Tr. Ct. Op., 3/25/19, at 2. The trial court noted that Section 717f(h) of the NGA, 15 U.S.C. § 717f(h),[4] grants the power of eminent domain to the holder of a certificate of public convenience and necessity that cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way. Tr. Ct. Op., 3/25/19, at 2. The trial court stated that "UGI has the power of eminent domain under the NGA after it has received [c]ertification from FERC." *Id.* In other words, "FERC and the NGA require that UGI [] obtain FERC certification relative to the Meeker Buffer Zone before it possesses the power of eminent domain." *Id.* at 3.

The trial court indicated that UGI's existing eminent domain power pertained solely to the land certified by FERC and that uncertified parcels of the Meeker Buffer Zone, such as Appellants' properties, did not fall within FERC's regulatory scope. *Id.* Assuming, *arguendo*, that UGI operated under state jurisdiction, the trial court noted that the Pennsylvania Public Utility Commission (PUC), the state regulatory body, had not issued UGI a certificate of public convenience to include the Meeker Buffer Zone. *Id.*

Consistent with the remand directives set forth in the 2017 Opinion, the trial court reviewed the decisions in *Robinson IV* and *Sunoco*. With regard to *Robinson IV*, the trial court noted that the Pennsylvania Supreme Court declared Section 3241 of the Oil and Gas Act to be unconstitutional as it authorized a private

---

[4] Specifically, Section 717f(h) of the NGA permits the exercise of the right of eminent domain when a right-of-way is necessary "to . . . operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of . . . other stations or equipment necessary to the proper operation" of such pipe lines. 15 U.S.C. § 717f(h).

5

corporation, which did not possess a certificate of public convenience, to take real property for the storage of natural gas.[5]  Tr. Ct. Op., 3/25/19, at 6.  The trial court further noted that in *Sunoco*, this Court held that the issuance of a certificate of public convenience is prima facie evidence of the public need for a proposed service and authorizes the entity receiving the same to exercise the power of eminent domain. Tr. Ct. Op., 3/25/19, at 4 (citing *Sunoco*, 143 A.3d at 1018).  The trial court then cited the following passage from *Sunoco*:

> Jurisdiction over the certification and regulation of public utilities in the Commonwealth is vested in the PUC through the Public Utility Code.[6]  However, simply being subject to PUC regulation is insufficient for an entity to have the power of eminent domain. . . .  Section 1104 of the [Public Utility] Code, 66 Pa.C.S. § 1104, requires that a public utility must possess a [c]ertificate of [p]ublic [c]onvenience issued by [the] PUC . . . before exercising the power of eminent domain.

Tr. Ct. Op., 3/25/19 at 4-5 (citing 143 A.3d at 1003).  Ultimately, the trial court concluded that *Robinson IV* and *Sunoco* support its position that UGI was "not clothed with the power of eminent domain as to [] Appellants' oil and gas rights in the [p]roperty."  Tr. Ct. Op., 3/25/19, at 6.

Finally, the trial court addressed Section 1511(a)(3) of the Business Corporation Law of 1988 (BCL), 15 Pa.C.S. § 1511(a)(3), which grants a public utility "the right to take, occupy and condemn property" for storage of natural or

---

[5] Section 3241 of the Oil and Gas Act was added by the Act of February 14, 2012, P.L. 87, No. 13, 58 Pa.C.S. §§ 2301-3504, known as Act 13.  The Supreme Court described Act 13 as "a sweeping law regulating the oil and gas industry—which, *inter alia*, repealed parts of the existing Oil and Gas Act of 1984 codified in Title 58 of the Pennsylvania Consolidated Statutes and created six new chapters therein," including Chapter 32. *Robinson IV*, 147 A.3d at 542 (footnote omitted).

[6] 66 Pa.C.S. §§ 101-3316.

6

artificial gas. Tr. Ct. Op., 3/25/19, at 5. The trial court noted that Section 1511(f) of the BCL, 15 Pa.C.S. § 1511(f), addresses the effect on other statutes and specifically provides that subsections (a) through (e) of Section 1511 "shall not be construed to . . . affect or modify any of the provisions of . . . [Section 1104 of the Public Utility Code,] 66 Pa.C.S. § 1104 (relating to certain appropriations by the right of eminent domain prohibited) . . . ." *Id.* The trial court stated that Section 1104 of the Public Utility Code requires a public utility to possess a certificate of public convenience before exercising any power of eminent domain within this Commonwealth. *Id.* The trial court indicated that there have been no assertions herein that UGI possesses a certificate of public convenience "from state regulator PUC or FERC, the federal equivalent, which would allow UGI to establish a buffer zone around a gas storage facility under Appellants' properties." *Id.* Because UGI had not been granted a certificate of public convenience from the PUC or FERC, the trial court held that Section 1511 of the BCL does not afford UGI "the power" of eminent domain. *Id.*

Appellants filed separate notices of appeal with the trial court. Thereafter, Appellants filed a concise statement of errors complained of on appeal, alleging that the trial court erred in concluding that: (1) Section 1511 of the BCL does not independently confer upon UGI the power of eminent domain; (2) in order for UGI to have the power of eminent domain under the BCL, it was first required to possess a certificate of public convenience from the PUC; (3) UGI does not have eminent domain power with respect to Appellants' properties situated within the Meeker Buffer Zone; and (4) UGI's action did not constitute a *de facto* taking of property rights for those properties, such as Appellants', that are within the Meeker Buffer Zone. Tr. Ct. Op., 6/25/19, at 2.

7

On June 25, 2019, the trial court issued an opinion in support of its order. The trial court acknowledged the power of eminent domain granted to an entity for the acquisition of underground gas storage facilities under state and federal law, but reiterated that UGI would need to update the certification it received from FERC relative to the Meeker Buffer Zone, specifically with respect to Appellants' properties, before it possessed such power. *Id.* at 3-4. While explaining that operation of the Meeker Storage Field and Meeker Buffer Zone are governed by the NGA and not state law, even assuming *arguendo* that state law applies, the trial court again stated that UGI lacks the power to condemn under state law because it does not possess the necessary certificate of public convenience from the PUC. *Id.* at 3-5. Further, the trial court stressed that a PUC certificate was necessary before UGI could "exercise the power of eminent domain" conferred by Section 1511 of the BCL. *Id.* at 6-7.

**Discussion**

On appeal,[7] Appellants argue that the trial court erred in concluding that UGI lacked the power of eminent domain such that a *de facto* taking of their properties did not occur here.[8] We agree with Appellants that the trial court erred insofar as it concluded that UGI lacked the *power* of eminent domain. However, we agree with the trial court that UGI could not *exercise* its power of eminent domain with respect to Appellants' properties and, as a result, a *de facto* taking did not occur.

---

[7] "This court's scope of review of a trial court's ruling on preliminary objections to a petition for appointment of a board of view[ers] is limited to determining whether there is competent evidence in the record to support the necessary findings and whether the trial court committed an error of law." *Hill v. City of Bethlehem*, 909 A.2d 439, 442 n.6 (Pa. Cmwlth. 2006).

[8] By order dated June 25, 2019, this Court consolidated Appellants' appeals.

8

### *De Facto* Condemnation/Taking

As this Court described in *In re Condemnation by Department of Transportation, of Right-of-Way for State Route 0079, Section 290, A Limited Access Highway in Township of Cranberry,* 805 A.2d 59 (Pa. Cmwlth. 2002) (*Norberry One Condominium Association*):

> A *de facto* condemnation occurs when the entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property. There are three elements that a property owner must show in order to establish a *de facto* taking. First, the condemnor must *have the power to condemn* the property. Second, the property owner must establish that there are exceptional circumstances that substantially deprive the property owner of the beneficial use and enjoyment of the property. Third, the property owner must demonstrate that the deprivation is the immediate, necessary and unavoidable consequence of *the exercise of the power to condemn.*

*Id.* at 68 (citations omitted) (emphasis in original deleted) (emphasis added). This Court has described the burden on a property owner seeking damages for an alleged *de facto* taking as "a heavy" one. *Thomas A. McElwee & Son, Inc. v. Se. Pa. Transp. Auth.*, 896 A.2d 13, 19 (Pa. Cmwlth. 2006). Further, "[t]here is no bright line test to determine when government action shall be deemed a *de facto* taking; instead, each case must be examined and decided on its own facts." *Id.*

### Power to Condemn

"In 1866, our Supreme Court explained that the Commonwealth's right 'to take private property without the owner's assent on compensation made . . . exists

in her sovereign right of eminent domain . . . . The power arises out of that natural principle which teaches that private convenience must yield to the public wants.'" *In Re Condemnation by Dep't of Transp., of Right-of-Way for State Route 0022, Section 034, in Twp. of Frankstown*, 194 A.3d 722, 730 (Pa. Cmwlth. 2018) (*Twp. of Frankstown*) (quoting *Appeal of Lance*, 55 Pa. 16, 25 (1866)). In 1913, our Supreme Court reiterated that "<u>every</u> private owner holds his property subject to the right of the sovereign to take the same, or such part of it as may be required to serve the public use," and described this power as "not necessarily created either by Constitution or statute, but [a]s an inherent attribute of sovereignty itself." *Twp. of Frankstown*, 194 A.3d at 730 (quoting *Phila. Clay Co. v. York Clay Co.*, 88 A. 487, 487-88 (Pa. 1913)) (emphasis added). Moreover, this Court has recognized that "the sovereignty can delegate the power to such entities as it sees fit, provided that its exercise is for a public use. This includes not only governmental bodies, but corporations and individuals." *Nw. Lehigh Sch. Dist. v. Agric. Lands Condemnation Approval Bd.*, 559 A.2d 978, 979-80 (Pa. Cmwlth. 1989) (emphasis added).

> As our Supreme Court recognized in *Robinson IV*:

> [T]he power of eminent domain is an inherent one possessed by the Commonwealth, as sovereign, which permits it to take private property for a public use if the landowner receives just compensation for the taking. *Reading Area Water Auth[.] v. Schuylkill [River] Greenway Ass['']n*, []100 A.3d 572, 578 ([Pa.] 2014). Although the Commonwealth may choose to delegate such power to other entities, the Commonwealth's power of delegation is not plenary, as it is restrained by our federal and state Constitutions, and may be further limited by statute. *Id.* at 579. The primary federal and state constitutional limitation imposed on the exercise of this power by the Commonwealth, or by any entity to which the Commonwealth has delegated such power, is that private property may only be taken to serve a public

10

purpose. [*In re Opening Private Rd. for Benefit of*] *O'Reilly*, 5 A.3d [246,] 258 [(Pa. 2010)]; *Phila*[.] *Clay Co.*[], []88 A. [at] 488 ("[T]he power of the Legislature to invest individuals or corporations with the right of eminent domain has its limitations, the most important of which is that the property taken must be for a public use."). In order to satisfy this public purpose requirement, "the public must be the primary and paramount beneficiary of the taking." *O'Reilly*, 5 A.3d at 258. A mere incidental benefit to the public from the taking is insufficient to render it lawful under both the United States and Pennsylvania Constitutions. *Id.* Further, because the exercise of eminent domain power is in derogation of private property rights, any statute that authorizes its use will be strictly construed in favor of landowners. *Reading Area Water Auth*[.], 100 A.3d at 578.

147 A.3d at 586.

UGI has been clothed with the *power* of eminent domain both by the Commonwealth, via Section 1511(a)(3) of the BCL, and the federal government, via Section 717f(h) of the NGA as regulated by FERC.[9] Section 1511(a)(3) of the BCL unambiguously states as follows:

> (a)  *General rule.*—A public utility corporation shall, in addition to any other power of eminent domain conferred by any other statute, have the right to take, occupy and condemn property for one or more of the following principal purposes and ancillary purposes *reasonably necessary or appropriate* for the accomplishment of the principal purposes:
> . . . .
>
> > (3) The . . . storage . . . of natural or artificial gas . . . for the public.

---

[9] Appellants originally relied in part on Section 3241 of the Oil and Gas Act as authorizing UGI's exercise of the power of eminent domain. However, as noted above, our Supreme Court declared Section 3241 to be unconstitutional in *Robinson IV*, which necessitated consideration of that case upon remand. Our Supreme Court's declaration in *Robinson IV*, however, does not affect Section 1511 of the BCL or Section 717 of the NGA.

11

15 Pa.C.S. § 1511(a)(3) (emphasis added).

There is no dispute that UGI fits within the definition of a "public utility corporation" under the BCL, as Section 1103 defines this term as:

> [a]ny domestic or foreign corporation for profit that:
>
> (1) is subject to regulation as a public utility by the [PUC] or an officer or *agency of the United States*; or
>
> (2) was subject to such regulation on December 31, 1980, or would have been so subject if it had been then existing.

15 Pa.C.S. § 1103 (emphasis added); *see also UGI Utils., Inc. v. City of Reading*, 179 A.3d 624, 626 (Pa. Cmwlth. 2017) ("UGI is a public utility corporation and natural gas distribution company regulated by the PUC."). UGI is a corporation subject to regulation by FERC,[10] an "agency of the United States," and, hence, qualifies as a "public utility corporation" under the BCL. *See* 15 Pa.C.S. § 1103; *Sunoco*, 143 A.3d at 1003. As such, UGI has the *power* under state law to condemn property for the storage of natural gas when such taking is "reasonably necessary or appropriate." 15 Pa.C.S. § 1511(a)(3).

As for federal law, the NGA authorizes condemnation for:

> [T]he necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, *or other stations or equipment* necessary to the proper operation of such line or pipe lines. . . .

---

[10] *See* 15 U.S.C. §§ 717 & 717f(c).

12

15 U.S.C. § 717f(h) (emphasis added).  Therefore, natural gas companies are clothed with the federal power of eminent domain to secure the necessary property for underground storage areas and related facilities.  *Id.*; *see also Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192, 1193 (6th Cir.), *cert. denied*, 506 U.S. 1022 (1992) (citing 15 U.S.C. § 717f(h)).

**The Right to Exercise the Power**

Before a natural gas company can condemn a particular property for a storage facility, it must first obtain a certificate of public convenience and necessity from the state or federal regulatory body.  *Sunoco*, 143 A.3d at 1003 ("Section 1104 of the [Public Utility] Code, 66 Pa.C.S. § 1104, requires that a public utility must possess a certificate of public convenience [] issued by [the] PUC . . . *before exercising* the power of eminent domain.") (emphasis added); 15 U.S.C. § 717f(c)(1)(A) (stating that a natural gas company may not "undertake the construction or extension of any facilities" for the transportation or sale of natural gas without "a certificate of public convenience and necessity issued by the Commission authorizing such acts"); *see also Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 243 (3d Cir. 2019) (stating that before natural gas company can acquire private property by eminent domain under the NGA, it "must first successfully obtain a certificate of public convenience and necessity from FERC and unsuccessfully attempt to purchase the required property from its owner"); *Columbia Gas Transmission Corp. v. Exclusive Gas Storage Easement*, 776 F.2d 125 (6th Cir. 1985) (*Parrott*); *Steckman Ridge GP, LLC v. Exclusive Nat. Gas Storage Easement* (W.D. Pa., Nos. 08-168, 08-169, 08-177, 08-

13

179 & 08-180, filed September 19, 2008), 2008 WL 4346405 (citing *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004)).

In the case *sub judice*, UGI has obtained a certificate of public convenience from FERC to operate the Meeker Storage Field and certain portions of the Meeker Buffer Zone for which UGI had already acquired property rights. *See* FERC Order Issuing Certificate to UGI ¶ 1; R.R. at 44a. Thus, FERC is the Commission authorizing the storage field and buffer zone in question.[11]

Once FERC issues a certification, the NGA empowers the holder of the certification to *exercise* its power of eminent domain as to those properties delineated in the certification. *See Steckman*, slip op. at __, 2008 WL 4346405, at *3 (citing *Sage*, 361 F.3d at 822; 15 U.S.C. § 717f(h)). In order to exercise the power of eminent domain relative to a particular property that property must be included within the certification. *See Parrott*, 776 F.2d at 129 (holding NGA authorized invoking the power of eminent domain to seek a gas storage easement if natural gas company secured a valid certificate of public convenience and necessity which included the area underneath landowners' property). If the property is not included in the certificated area, the natural gas company cannot use its condemnation power until the certificated area is amended to include the subject property within the boundaries of the certification. *Id.*

This Court's decision in *Sunoco* confirmed that a natural gas company may exercise the power of eminent domain when it has acquired a certificate of public convenience from the PUC (for matters of intrastate concern) or a certification

---

[11] In its Pa.R.A.P. 1925(a) Opinion, the trial court indicates there is agreement among the parties that UGI is exclusively regulated by FERC. Tr. Ct. Op., 6/25/19, at 3. While, in this matter, this Court does not address the dual regulatory nature of natural gas, *see Sunoco*, 143 A.3d at 1003-04, or any agreement between the parties regarding exclusive jurisdiction, we need not reach this issue here as UGI does not possess a certificate of public convenience from either FERC or the PUC with respect to Appellants' properties.

14

from FERC (for matters of interstate concern). 143 A.3d at 1016 (finding no error in trial court's conclusion that a PUC certificate of public convenience allowed a natural gas company to exercise the power of eminent domain to condemn property for the construction of a pipeline that is also utilized for the intrastate shipment of gas). Here, UGI has obtained a certificate of public convenience and necessity from FERC to operate the Meeker Storage Field and certain portions of the Meeker Buffer Zone for which UGI had already acquired property rights. *See* FERC Order Issuing Certificate to UGI ¶¶ 1-2; R.R. at 44a. Analogous to *Sunoco*, wherein this Court held that "[a] [certificate of public convenience] issued by [the] PUC is prima facie evidence that [the] PUC has determined that there is a public need for the proposed service and that the holder is clothed with the eminent domain power," 143 A.3d at 1018, FERC's issuance of a certificate of public convenience and necessity to UGI here evidences that FERC has determined there is a necessary public purpose for the Meeker Storage Field and Buffer Zone, and that the holder is also clothed with the power of eminent domain. Notably, the certificate could not be issued to an entity that did not have the power of eminent domain. *See* 15 U.S.C. § 717f(c) & (f). The certificate defines the scope of the taking that is necessary for the public purpose and, as such, expresses the terms by which the power of eminent domain can be exercised. *See* 15 U.S.C. § 717f(e).

Here, Appellants' properties were not subject to the FERC certification, because UGI had not yet taken steps to include those properties in the scope of the certification. FERC specified in its order issuing the certificate to UGI as follows:

> 56. However, UGI [] also seeks to acquire the entire Meeker storage facility, which is not currently certificated. . . . UGI [] did not provide any information regarding any negotiations to acquire the rights to the rest of the

15

proposed buffer area.  In addition, UGI [] did not comply with [the] landowner notification requirements in section 157.6(d) of [FERC]'s regulations.

57.  UGI [] has provided no evidence that it has contacted the owners of the properties in the proposed buffer zone for which CPG does not already have the necessary property rights or any information regarding what efforts, if any, have been made to acquire those property rights.  Therefore, [FERC] finds, with respect only to those areas of the proposed buffer zone for the Meeker facility for which CPG or UGI [] does not already own sufficient property rights, that UGI[]'s proposal does not satisfy the Certificate Policy Statement.  Therefore, this order will certificate only those portions of the 2,980 acres of the proposed buffer zone for the Meeker facility for which UGI [] has already acquired the necessary property rights or will be able to acquire such rights from CPG. . . .

*See* FERC Order Issuing Certificate to UGI ¶¶ 56-57; R.R. at 65a-66a.

While UGI indicated to FERC its intent to proceed to secure rights to the subject properties in accordance with FERC's landowner notification requirements, after which UGI would apply to FERC to expand its certificated Meeker Buffer Zone, such application for expansion of the certification has not yet taken place.[12]  *See* R.R. at 109a-17a.  After Appellants' properties are included within the FERC certification, if UGI and Appellants are unable to reach an agreement for UGI to acquire Appellants' properties, UGI can exercise its power to condemn Appellants' properties through its power of eminent domain.  The fact that the parties have not reached this stage in the proceedings does not mean that UGI does not possess the *power* of eminent domain.  Rather, the lack of inclusion of

---

[12] Such intent is reflected in a November 22, 2010 letter sent by UGI's counsel to Kimberly D. Bose, in her position as FERC Secretary.

16

Appellants' properties in the FERC certification affects UGI's ability to *exercise* its power of eminent domain over Appellants' properties. *See* 15 U.S.C. § 717f(c); *Parrott*, 776 F.2d at 129; *Steckman*, slip op. at ___, 2008 WL 4346405, at *13. Therefore, the trial court erred insofar as it held that UGI lacked the power of eminent domain, and the trial court should have continued its analysis beyond this first factor required for a *de facto* taking. *See Norberry One Condo. Ass'n*, 805 A.2d at 68.

Nevertheless, the trial court's order sustaining UGI's preliminary objections and dismissing Appellants' respective petitions for appointment of a board of viewers must stand. As discussed above, while UGI is clothed with the power of eminent domain under federal law, UGI would need to take additional steps to update its FERC certification relative to the Meeker Buffer Zone, specifically with respect to Appellants' properties, before it could *exercise* that power of eminent domain over Appellants' properties. In our 2017 Opinion, we explained that FERC's October 10, 2010 order issued UGI a certification to operate certain portions of the Meeker Buffer Zone where UGI had already acquired property rights, and provided that UGI "may file a further application to include other areas within the certificated buffer zone at a later date, [after] complying with [FERC's] landowner notification requirements." 2017 Opinion, slip op. at 2. Section 717f(h) of the NGA confirms the ability of the holder of a FERC certification, such as UGI, to *exercise* the power of eminent domain, but only after the certification includes the property at issue. 15 U.S.C. § 717f(h); *see also Parrott*, 776 F.2d at 129; *Steckman*, slip op. at ___, 2008 WL 4346405, at *13. UGI's failure to obtain certification from FERC evidencing Appellants' properties are a necessary part of the Meeker Buffer Zone precludes UGI from exercising the power of eminent domain over such properties. This failure

also precludes a finding that a *de facto* taking occurred here, since Appellants cannot establish that any purported deprivation of the beneficial use and enjoyment of their properties "is the immediate, necessary and unavoidable consequence of the *exercise of the power* to condemn," the third prong necessary to find a *de facto* taking. *Norberry One Condo. Ass'n*, 805 A.2d at 68 (citation omitted) (emphasis added). This is not to say, however, that Appellants may not have other available remedies in tort. *See, e.g., Bowman v. Columbia Gas Transmission Corp.* (6th Cir., No. 87-3166, filed July 6, 1988), 1988 WL 68890 (affirming jury award of punitive damages to landowners in trespass action given willful and outrageous character of natural gas company's actions); *Humphries v. Williams Nat. Gas Co.*, 48 F. Supp. 2d 1276 (D. Kansas 1999) (holding gas company's condemnation action under section 717f(h) of the NGA did not preempt all of landowner's pre-condemnation state law claims, such as trespass); *Griffith v. Millcreek Township*, 215 A.3d 72 (Pa. Cmwlth. 2019) (discussing difference between *de facto* taking and trespass); *McMaster v. Township of Bensalem*, 161 A.3d 1031, 1036 (Pa. Cmwlth. 2017); *In re Condemnation by Dep't of Transp., of Right-of-Way for State Route 1032, Section B02, in Borough of Rochester*, 137 A.3d 666, 670-73 (Pa. Cmwlth. 2016); *Kennedy v. Consol Energy Inc.*, 116 A.3d 626, 636 (Pa. Super. 2015) ("It is well-settled law that in order to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in the possession of another without a privilege to do so." (citing *Kopka v. Bell Tel. Co.*, 91 A.2d 232, 235 (Pa. 1952); Restatement (Second) of Torts § 164 (Am. Law. Inst. 1965))); *Poole v. Township of District*, 843 A.2d 422, 424-25 (Pa. Cmwlth. 2004); Restatement (Second) of Torts §§ 158 (Liability for Intentional Intrusions on Land) & 159 (Intrusions Upon, Beneath, and Above Surface of Earth) (Am. Law. Inst. 1965).

Accordingly, the order of the trial court is affirmed, albeit on other grounds.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl F. Hughes and Ellen B. Hughes, :
h/w, and Bruce D. Hughes and Margaret :
K. Hughes, h/w, individually and on :
behalf of all others similarly situated, :
               Appellants :
 :
      v. :
 : No. 453 C.D. 2019
UGI Storage Company :
 :
 :
 :
John Albrecht, individually and on :
behalf of all others similarly situated, :
               Appellant :
 :
      v. :
 : No. 454 C.D. 2019
UGI Storage Company :

O R D E R

AND NOW, this 12th day of November, 2020, the March 25, 2019 order of the Court of Common Pleas of Tioga County is hereby **AFFIRMED**.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl F. Hughes and Ellen B. Hughes, :
h/w, and Bruce D. Hughes and Margaret :
K. Hughes, h/w, individually and on :
behalf of all others similarly situated, :
                Appellants :
                 :
            v. : No. 453 C.D. 2019
                 :
UGI Storage Company :
                 :
John Albrecht, individually and on :
behalf of all others similarly situated, :
                Appellant :
                 :
            v. : No. 454 C.D. 2019
                 : Argued: December 11, 2019
UGI Storage Company :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

CONCURRING/DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: November 12, 2020

        I agree with the majority that UGI Storage Company (UGI) is a public

utility clothed with the power of eminent domain and that the Court of Common

Pleas of Tioga County (trial court) erred in otherwise holding. I depart from the

majority's conclusion that because UGI cannot yet undertake a formal condemnation

of property owned by Carl F. Hughes and others (Landowners), UGI cannot be the

subject of a *de facto* condemnation proceeding.  Respectfully, I dissent from that portion of the majority opinion, and I join the dissent of Judge McCullough.

Depleted oil and gas fields can be effectively converted into vast storage containers for natural gas. *Northern Natural Gas Company v. ONEOK Field Services Company, LLC,* 448 P.3d 383, 389 (Kan. 2019).  The rock formation of the underground reservoir must be porous enough to accommodate a large quantity of gas and sufficiently permeable to allow gas to be injected and withdrawn rapidly. *Id.*  The reservoir must be sealed by a barrier of impermeable rock lest the natural gas migrate out of the underground reservoir.  *Id.*  This geologic barrier is known as the buffer zone.  Natural gas storage fields have generated controversy around the country.  *See* Steven D. McGrew, Note, *Selected Issues in Federal Condemnations for Underground Natural Gas Storage Rights: Valuation Methods, Inverse Condemnation, and Trespass*, 51 CASE W. RES. L. REV. 131, 134 (2000) (review of "property owner's rights to the subsurface geological formations" beneath the surface land and the issues created where gas companies have not "scrupulously followed" the procedures prescribed in the federal Natural Gas Act, 15 U.S.C. §§717-717z, for condemning property used in gas storage fields).

The Natural Gas Act confers the power of eminent domain upon gas companies to construct underground storage fields, including buffer zones.  To pursue a lawful condemnation under the Natural Gas Act, the gas company must be granted a "certificate of public convenience and necessity" by the Federal Energy Regulatory Commission (FERC).  15 U.S.C. §717f(h).  Section 1511(a)(3) of Pennsylvania's Business Corporation Law of 1988 also confers on a public utility corporation "in addition to any other power of eminent domain conferred by any

other statute," the right "to take, occupy and condemn property for" the storage of natural or artificial gas. 15 Pa. C.S. §1511(a)(3). In short, the Natural Gas Act and the Business Corporation Law establish that UGI is a utility corporation expressly clothed with the power to condemn property to develop a natural gas storage field and buffer zone.

In 2010, FERC granted a certificate of public convenience to UGI for its natural gas storage field known as the Meeker Storage Field and for a protective buffer surrounding the precinct of that field known as the Meeker Buffer Zone. UGI's application with FERC showed Landowners' property as falling within the Meeker Buffer Zone for which UGI sought a certificate. FERC exempted Landowners' property from UGI's certificate because UGI had not given Landowners notice of the certificate application. Notably, FERC's certification advised UGI that it "may file a further application to include … other areas within the certificated buffer zone at a later date, [to comply] with … landowner notification requirements." Reproduced Record at 66a (R.R. __). To date, UGI has not complied with these notification requirements with regard to Landowners. Amended Petition at 17, ¶57; R.R. 18a.

Landowners contend that UGI has used and continues to use their subsurface rock as a barrier to prevent gas from migrating out of the Meeker Storage Field. Amended Petition at 5, ¶12; R.R. 6a. Indeed, UGI has identified Landowners' property as part of the Meeker Buffer Zone in all of its filings with FERC. Landowners further contend that UGI's designation of land for the Meeker Buffer Zone has "precluded all potential fracking activities within that buffer zone." Amended Petition at 19, ¶65; R.R. 20a. Landowners contend that "natural gas

exploration, drilling and production companies … no longer have any interest in leasing property rights" from Landowners to do deep drilling. Amended Petition at 19, ¶66; R.R. 20a. Landowners initiated a *de facto* condemnation action under Section 502(c) of the Eminent Domain Code, 26 Pa. C.S. §502(c), seeking just compensation from UGI for the substantial deprivation of their use and enjoyment of their land.[1] *Visco v. Department of Transportation,* 498 A.2d 984, 986 (Pa. Cmwlth. 1985) (holding that a substantial deprivation of the owner's beneficial use includes all potential uses, including its highest and best use). The trial court

---

[1] Landowners petitioned for the appointment of a board of viewers under Section 502(c) of the Eminent Domain Code, which states:

> (c) Condemnation where no declaration of taking has been filed--
>
> > (1) An owner of a property interest who asserts that the *owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers substantially in the form provided for in subsection (a)* setting forth the factual basis of the petition.
> >
> > (2) The court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned.
> >
> > (3) The court shall enter an order specifying any property interest which has been condemned and the date of the condemnation.
> >
> > (4) A copy of the order and any modification shall be filed by the condemnor in the office of the recorder of deeds of the county in which the property is located and shall be indexed in the deed indices showing the condemnee as grantor and the condemnor as grantee.

26 Pa. C.S. §502(c) (emphasis added).

"By its very nature, this type of claim involves specified property that has not been formally taken by a governmental entity through the actual exercise of the power of eminent domain, and it 'is applicable only where a condemnor is found by the court to have taken property without the filing of a declaration of taking.'" *Somera Road – 835 West Hamilton Street, LLC v. City of Allentown* (Pa. Cmwlth., No. 568 C.D. 2019, filed August 25, 2020), slip op. at 13-14 (unreported) (quoting *Department of Transportation v. Schodde*, 512 A.2d 101, 102 n.1 (Pa. Cmwlth. 1986)).

dismissed Landowners' action for the stated reason that UGI was not a public utility clothed with the power of condemnation.

The majority rejects this conclusion of the trial court, holding that "UGI has been clothed with the *power* of eminent domain both by the Commonwealth, via Section 1511(a)(3) of the [Business Corporation Law], and the federal government, via Section 717f(f) of the [Natural Gas Act] as regulated by FERC." *Hughes v. UGI Storage Company*, __ A.3d __, __ (Pa. Cmwlth., Nos. 453, 454 C.D. 2019, filed November 12, 2020), slip op. at 11 (emphasis in original). I agree. The majority then reasons that "the lack of inclusion of [Landowners'] properties in the FERC certification affects UGI's ability to *exercise* its power of eminent domain over [Landowners'] properties." *Id*. at __, slip op. at 17 (emphasis in original). This observation, while correct, does not account for the difference between a *de jure* and *de facto* condemnation. A petition filed under Section 502(c) is reserved for the situation where an "interest has been condemned without the filing of a declaration of taking." 26 Pa. C.S. §502(c).

"A *de jure* condemnation is one initiated by the condemning body in compliance with all statutory requirements[.]" *Captline v. County of Allegheny*, 727 A.2d 169, 171 n.7 (Pa. Cmwlth. 1999). By contrast, a "*de facto* condemnation occurs outside the legal process when *an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his or her property*." *Id.* (emphasis added). In other words, a *de facto* taking is a response to the reality that activities carried on incident to a governmental (or utility) action may interfere with land ownership, "even though the power of eminent domain has not been formally exercised against the property in question." *Redevelopment Authority*

MHL-5

*of City of Hazleton v. Hudock*, 281 A.2d 914, 917 (Pa. Cmwlth. 1971). Landowners' petition asserts that UGI has exercised its powers of eminent domain, albeit not in accordance with the Natural Gas Act.

The majority is correct that UGI cannot undertake a *de jure* condemnation of Landowners' property pursuant to the Natural Gas Act until it has the approval of FERC. However, the condemnor's failure to follow the statutory procedure for effecting a lawful condemnation is the *sine qua non* of a *de facto* condemnation. It is a condemnation that "occurs outside the legal process." *Captline,* 727 A.2d at 171 n.7.

In *Fulmer v. White Oak Borough*, 606 A.2d 589 (Pa. Cmwlth. 1992), the borough left its lawful right-of-way and entered onto the plaintiff's land by five or six feet while grading a road. The plaintiff pursued a trespass and negligence action against the borough for damages. The borough argued that the plaintiff's exclusive remedy was under the Eminent Domain Code. The trial court agreed, and this Court affirmed the trial court.

In so holding, this Court reviewed the difference between a trespass action and a *de facto* condemnation. Generally,

> landowners have been relegated to an action in trespass when an entity possessing the power of eminent domain has caused damage to private property in a more direct manner, but where the damage is not incidental to or the result of the exercise of that eminent domain power. *See, e.g., Jacobs* [*v. Nether Providence Township,* 453 A.2d 336 (Pa. 1982)] (township may have negligently issued building permits for construction which result in flooding damage to neighboring properties, but such action was not related or incidental to exercise of power of eminent domain and landowners could not proceed under the [Eminent Domain] Code); *Enon Valley Telephone* [*Company v. Market,* 493 A.2d 800 (Pa. Cmwlth. 1985)] (landowner may only proceed

in trespass where telephone company installs equipment on land on which it mistakenly believes it has a right-of-way).

*Fulmer*, 606 A.2d at 591 (citations omitted).

In *Fulmer*, the borough did not mistakenly use the land owned by the plaintiff. Rather, the borough intended to use the plaintiff's land and did so without following the lawful process for obtaining an easement. We explained as follows:

> This Court has held that where an entity clothed with the power of eminent domain enters upon and appropriates for its own use the private property of another, *the landowner may treat this as a valid condemnation even though the statutorily described procedure was not followed. O'Keefe v. Altoona City Authority*, [] 304 A.2d 916 ([Pa. Cmwlth. ]1973). While the question of when a [*de facto*] taking has occurred may be a difficult one, it is clear that when property is actually taken or entered, a condemnation has occurred. *See Ewalt v. Pennsylvania Turnpike Commission*, [] 115 A.2d 729 ([Pa. ]1955).

*Id.* (emphasis added). The borough's intentional action in leveling a hill owned by the plaintiff was treated as a "condemnation even though the statutorily prescribed procedure was not followed" and, thus, authorized a *de facto* condemnation proceeding. *Id.* at 591.[2]

Similarly, in *St. Catherine Church v. Mountaintop Area Joint Sanitary Authority*, 427 A.2d 726 (Pa. Cmwlth. 1981), the landowners filed an action in trespass and ejectment, alleging that the sewer authority constructed sewer lines across their land without filing a declaration of taking. The trial court dismissed the action, concluding that the exclusive remedy of the landowners was to petition for

---

[2] This Court further held that the Eminent Domain Code provides "a complete and *exclusive* procedure to govern all condemnation[] of property for public purposes and the assessment of damages therefore." *Fulmer*, 606 A.2d at 593 (citing former Section 303 of the Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P.L. 84, *formerly* 26 P.S. §1-303, repealed by the Act of May 4, 2006, P.L. 112) (emphasis in original).

the appointment of viewers under former Section 502(e) of the Eminent Domain Code of 1964.[3]

As Judge McCullough notes in her dissent, a "*de facto* condemnation does not require an intention to acquire a property but only that the injury is a direct result of intentional action by an entity clothed with the power of eminent domain." *Hughes*, __ A.3d at __, slip op. at 6 (McCullough, J., dissenting) (quoting *In re Mountaintop Area Joint Sanitary Authority,* 166 A.3d 553, 562 (Pa. Cmwlth. 2017)). A *de facto* condemnation does not require "the physical seizure of property" but, rather, an interference with the rights of ownership that deprives the "owner of the beneficial use of his property." *Id.* at __, slip op. at 6 (quotation omitted). This was the holding of this Court in *McGaffic v. Redevelopment Authority of the City of New Castle,* 548 A.2d 653 (Pa. Cmwlth. 1988).

In *McGaffic*, the Redevelopment Authority of New Castle recorded a plan to redevelop the downtown area. The plan identified 212 buildings slated for demolition, including one owned by McGaffic. After filing the plan, the Redevelopment Authority delayed its filing of its declaration of taking McGaffic's building. Twelve years later, the Redevelopment Authority withdrew McGaffic's building from its downtown plan. McGaffic then instituted a *de facto* condemnation proceeding.[4] McGaffic asserted that the Redevelopment Authority's public filings caused McGaffic to lose tenants and effectively made it impossible to compete in

---

[3] Act of June 22, 1964, Spec. Sess., P.L. 84, *as amended*, *formerly* 26 P.S. §502(e), repealed by the Act of May 4, 2006, P.L. 112.

[4] McGaffic filed a petition for appointment of viewers pursuant to former Section 502(e) of the Eminent Domain Code of 1964.

the commercial real estate market. The trial court granted McGaffic's petition for the appointment of viewers, and this Court affirmed.

*McGaffic* teaches that precondemnation activity can constitute a *de facto* taking, notwithstanding the fact that there has been no actual exercise of the power of eminent domain by the condemnor or physical intrusion upon the petitioner's land. As in *McGaffic,* UGI's actions prefatory to a declaration of taking have diminished the value of Landowners' property.

That UGI needs certification from FERC to pursue a lawful condemnation of Landowners' property is irrelevant to whether UGI has effected a *de facto* condemnation of Landowners' property incident to its maintenance and operation of the Meeker Storage Field.[5] UGI has announced to the federal government and to the world that UGI intends to use Landowners' property to prevent natural gas from escaping the Meeker Storage Field. Landowners' allegations that UGI's actions have deprived Landowners of their ability to develop their mineral rights may be difficult to prove, but they state a *de facto* condemnation claim. Under Section 502(c) of the Eminent Domain Code and the above-reviewed precedent, Landowners are entitled to make their evidentiary case that, in fact, a taking has occurred. *Mountain Area Joint Sanitary Authority v. St. Jude Church*, 457 A.2d 1024 (Pa. Cmwlth. 1983) (holding that trial court, not board of viewers, determines the factual question of whether a *de facto* taking has occurred).

The majority's decision immunizes UGI from liability for its intentional actions that are alleged to have diminished Landowners' beneficial use

_____

[5] Under *Fulmer* and *St. Catherine Church,* Landowners' allegations may not support an action in trespass. I do not agree with this part of the majority's discussion, which, in any case, is not the holding and need not be addressed.

MHL-9

of their property. Not even government condemnors enjoy such an immunity. I would reverse the trial court's order and remand this matter to the trial court for a hearing on the factual question of whether a *de facto* condemnation of Landowners' property has occurred.

 

                                _____

                                MARY HANNAH LEAVITT, President Judge

Judge McCullough joins in this concurring/dissenting opinion.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl F. Hughes and Ellen B. Hughes, :
h/w, and Bruce D. Hughes and :
Margaret K. Hughes, h/w, individually :
and on behalf of all others similarly :
situated, :
               Appellants :
  :  No. 453 C.D. 2019
               v. :
  :
UGI Storage Company :
  :
  :
  :
John Albrecht, individually and on :
behalf of all others similarly situated, :
               Appellant :
  :  No. 454 C.D. 2019
               v. :
  :  Argued: December 11, 2019
UGI Storage Company :
  :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH               FILED: November 12, 2020


      I respectfully disagree with the Majority's conclusion that the

averments in the petitions of the condemnees-landowners (Appellants) in the above-

captioned case[1] have failed to state a valid cause of action for a *de facto* taking because there has been no exercise of a power to condemn, particularly with respect to Appellants' property rights.  In my view, the Majority misinterprets and misapplies the relevant case law and, in essence, requires Appellants to prove that a *de jure* taking has been effectuated in order to state a legally cognizable claim for a *de facto* taking.

Here, the Federal Energy Regulatory Commission (FERC) granted UGI Storage Company (UGI) a certificate of public convenience and necessity (FERC Certificate) to a construct a natural gas storage field.  FERC also granted UGI a FERC Certificate for a protective buffer surrounding the precinct of that field, a "buffer zone," in order to protect the integrity of the storage field and prevent natural gas from migrating to areas outside the geographic contours of the storage facility.  Ultimately, a FERC Certificate conclusively establishes that the proposed oil and gas project listed therein fulfills and furthers the public interest.  *See Williston Basin Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1097 (9th Cir. 2008) ("[A] key Congressional goal in enacting the [Natural Gas Act (NGA)[2]], namely, to have FERC balance the competing public interests involved in a proposed project through the issuance of certificates of public convenience and necessity."); *Transwestern Pipeline Co. v. 17.19 Acres of Property Located in Maricopa County*, 550 F.3d 770, 778 n.9 (9th Cir. 2008) ("The NGA does not allow landowners to collaterally attack [] FERC [C]ertificate in the district court[.]").  Consequently, and for the reasons discussed below, a FERC Certificate, for all intents and purposes, is

---

[1] Carl F. Hughes and Ellen B. Hughes, h/w, and Bruce D. Hughes and Margaret K. Hughes, h/w, individually and on behalf of all others similarly situated, and John Albrecht, individually and on behalf of all others similarly situated.

[2] 15 U.S.C. §§717-717z.

tantamount to an intentional governmental act that is substantially related to, and inexorably intertwined with, the exercise of the authority to condemn property.

Significantly, once parcels of property are certified within the FERC Certificate, section 717f(h) of the NGA vests a gas producer with the unconditional right to condemn that property.[3] As such, when FERC issues a FERC Certificate, the act of filing an official condemnation petition is a ministerial formality whereby the court merely determines an appropriate amount of damages—or just compensation—that is owed to a landowner that is unable to agree on the monetary amount with the gas producer. *See Equitrans, L.P. v. Moore*, 725 F. App'x 221, 224 (4th Cir. 2018) ("Here, [the gas company] has a [FERC] [C]ertificate and cannot acquire the needed land by contract with the [landowners]. That is all the NGA requires for a condemnation."); *Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 F. App'x 495, 498 (1st Cir. 2005) (observing that when "a gas company is unable to acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking"). Stated differently, the right of condemnation flows from the FERC Certificate and, under

_____

[3] In pertinent part, section 717f(h) of the NGA provides as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. §717f(h).

the NGA, is obtainable as a matter of course.[4]    Even the Majority appears to recognize this legal precept, at least to some extent.  *See Hughes v. UGI Storage Co.*, __ A.3d __, __ (Pa. Cmwlth., Nos. 453 and 454 C.D. 2019, filed November 12, 2020), slip op. at 15 ("FERC's issuance of a [FERC Certificate] to UGI here evidences that FERC has determined there is a necessary public purpose for the [] [s]torage [f]ield and [b]uffer [z]one, and that the holder is also clothed with the power of eminent domain . . . . The [FERC] [C]ertificate defines the scope of the taking that is necessary for the public purpose and, as such, expresses the terms by which the power of eminent domain can be exercised.").

That said, I believe that the Majority misapprehended or overlooked the practical and legal effects that the FERC Certificate had on UGI's freestanding ability to wield the power to condemn property officially and formally.  Quite

---

[4] In essence, in the event a landowner and gas producer agree on the amount of compensation, and this information is included within the FERC Certificate, the FERC Certificate effectively operates as a formal condemnation under the Eminent Domain Code (Code).  26 Pa.C.S. §§101-1106.  More specifically, such an agreement entered pursuant to FERC's administrative regime and the NGA is equivalent to the scenario where an official declaration of taking is filed under the Code, a landowners' preliminary objections are overruled, and the matter is later settled because the parties agreed on the amount of compensation.  *See* sections 302, 306 and 501 of the Code, 26 Pa.C.S. §§302 ("Condemnation under the power of condemnation given by law to a condemnor shall be effected only by the filing in court of a declaration of taking . . . ."); 306 (stating that "the condemnee may file preliminary objections to the declaration of taking," which "shall be the exclusive method of challenging," among other things, "[t]he power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated"); 501 ("At any stage of the proceedings, the condemnor and the condemnee may agree upon all or any part or item of the damages and proceed to have those parts or items not agreed upon assessed as provided in this chapter.  The condemnor may make payment of any part or item agreed upon."); *cf. Breinig v. Allegheny County*, 2 A.2d 842, 846-47 (Pa. 1938) ("Even where the State, by purchase or eminent domain, acquires a fee in the land upon which the highway rests, the abutting owner . . . retains, as an incident to ownership of the remainder of his land, the right of access, or of ingress and egress.  This right cannot be taken from him unless compensation is made therefor under the law.").  In both instances, the governmental entity, or its delegate, has the authority to take property and commits an overt act with respect to the condemnation of property and its purchase price.

simply, the FERC Certificate, *per se*, authorized UGI to take property and the exercise of its power to condemn property in the public interest is necessarily included and subsumed within the FERC Certificate. In other words, a FERC Certificate, if applied to the provisions of the Eminent Domain Code (Code), "previously adjudicated," as a matter of law, "[t]he power or right of [UGI] to appropriate the condemned property" designated in the FERC Certificate. Section 306 of the Code, 26 Pa.C.S. §306. *See generally In re Condemnation by Sunoco Pipeline, L.P.*, 143 A.3d 1000 (Pa. Cmwlth. 2016) (en banc) (discussing gas utilities' power and authority, per a certificate of convenience (CPC), to take property through eminent domain and how the CPC definitely established the public need or necessity of the gas project); *cf. Williston Basin Interstate Pipeline Co.*, 524 F.3d at 1099 (explaining that a gas company has the unconditional authority of eminent domain under the NGA and that power extends to any property located within the geographical area that is designated on the map(s) attached to the application for the FERC Certification). Therefore, I do not think that the Majority fully appreciates the power of eminent domain that UGI possesses under the NGA or the manner in or extent to which UGI utilized that power in this case, courtesy of the FERC Certificate.

More pointedly, I take issue with the Majority's conclusion that "UGI would need to take additional steps to update its FERC certification relative to the . . . [b]uffer [z]one, specifically with respect to Appellants' properties, before it could *exercise* that power of eminent domain over Appellants' properties." *Hughes*, __ A.3d at __, slip op. at 17 (emphasis in original). Contrary to the way the Majority frames the issue, this is not case of *de jure* condemnation, and, thus, it was not necessary for Appellants to prove that UGI has specified their property for condemnation in a FERC Certificate.

As this Court has stated, "a *de facto* condemnation does not require an intention to acquire a property but only that the injury is a *direct result of intentional action* by an entity clothed with the power of eminent domain." *In re Mountaintop Area Joint Sanitary Authority*, 166 A.3d 553, 562 (Pa. Cmwlth. 2017) (internal citations omitted; emphasis in original). In somewhat different language, we have said:

> A *de facto* taking is not the physical seizure of property; rather, it is an interference with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property . . . . Where the injury is a direct result of *intentional action* by an entity clothed with the power of eminent domain, that entity will be held liable in a *de facto* condemnation action.

*McGaffic v. City of New Castle*, 74 A.3d 306, 315 (Pa. Cmwlth. 2013); *see also Sansom Street, Caplan's Appeal*, 143 A. 134, 136 (Pa. 1928) ("There need not be an actual, physical taking, but any destruction, restriction or interruption of the common and necessary use and enjoyment of property in a lawful manner may constitute a taking for which compensation must be made to the owner of the property."); *In re Mountaintop Area Joint Sanitary Authority*, 166 A.3d at 562 (holding that a claim for a *de facto* taking is cognizable when the harm to the property is simply "related to or incidental to [the condemnor's] condemnation powers") (internal citations omitted; emphasis in original). Succinctly put, Pennsylvania precedent clearly establishes that "intentional action" on the part of condemnor—action that is related to or incident to its condemnation power—will suffice to support a *de facto* claim in the situation where that action, coordinated in and to a specific area, nonetheless has a collateral and detrimental effect on the property rights of surrounding landowners.

Importantly, this proposition holds true regardless of whether the condemnation of Appellants' property was inevitable or imminent. *See McCracken*

*v. City of Philadelphia*, 451 A.2d 1046, 1050 (Pa. Cmwlth. 1982) ("When pre-condemnation activities, pursuant to a planned prospective public improvement, result in the loss of tenants, or the inability to obtain a building permit, or any other adverse interim consequence which deprives an owner of the use and enjoyment of the property, such activities will constitute a *de facto* taking. Even in the absence of the imminence of condemnation, we conclude here that these adverse interim consequences, depriving [landowner] of the same use and enjoyment of his property, constituted a *de facto* taking.") (internal citations and quotation marks omitted). Here, in their petitions, Appellants have sufficiently alleged in paragraphs 49, 59, 65, and 68 that UGI intentionally created the buffer zone, via a FERC Certificate and acquisition of adjacent properties under the NGA, to ensure that gas producers would not extract or "capture" natural gas through fracking. Appellants have also averred that, as a direct result of UGI's conduct, they have sustained harm to their property because they have been effectively deprived of their possessory interests in the subsurface mineral rights. *See* Reproduced Record (R.R.) at 16a-21a.

> As I previously expressed in a dissenting opinion in this case:

> > [UGI] has already obtained certification from [FERC] to utilize and devote a substantial portion of a "buffer zone" to protect its natural gas interests and storage field boundary. [Appellants] are quarantined in a small part of the "buffer zone."
> > . . . .

> > Despite the fact that UGI has not received certification from FERC to obtain [Appellants'] property or commenced a *de jure* condemnation, the end result is that the brunt of the harm has been inflicted, and the wound remains and will continue to remain. [Appellants] are isolated on an island in a "buffer zone" in which oil and gas drilling cannot occur. UGI's actions and conduct are a matter of public record and any person interested in [Appellants'] subsurface mineral rights would discover

through the exercise of due diligence that UGI has [a FERC Certificate]. It should come as no surprise, then, that [Appellants] have asserted a *de facto* taking, alleging that UGI has essentially placed an ever-present dooming cloud over their island in the "buffer zone," and, as a result, they are unable to enter into lucrative leases with third[]parties for oil and gas exploration.

Accepting the allegations in [Appellants'] petitions as true, I would conclude that they are sufficient to entitle [Appellants] to the appointment of viewers and that the [court of common pleas] erred in granting UGI's preliminary objections. Accordingly, I would reverse the trial court's order and remand to the trial court to convene a hearing on the merits of [Appellants'] claims and any factual issues related thereto.

*Hughes v. UGI Storage Co.* (Pa. Cmwlth., Nos. 629 and 630 C.D. 2016, filed March 13, 2017) (unreported) (McCullough, J., dissenting), slip op. at 2-4 (internal citations omitted).

Upon review and consideration, I am not convinced that anything has occurred on remand following our decision in 2017, or during this second round of appeal, that could alter the position that I have previously taken. Hence, I continue to adhere to it today and, for the reasons stated above, respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

President Judge Leavitt joins in this dissent.

PAM - 8